Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6513 | **DATE** | 8/2/2001 |
| **CASE TITLE** | Shaffer vs. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment and defendant's cross motion for summary judgment. Plaintiff's motion for summary judgment is granted insofar as it requests remand. Defendant's cross motion for summary judgment is denied. The cause is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P. terminating the case.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 09 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | EB | 20 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -8 AM 8:57 | |
| SM | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA E. SHAFFER., <br><br> Plaintiff, <br><br> v. <br><br> LARRY G. MASSANARI, <br> Commissioner of the Social Security <br> Administration, <br><br> Defendant. | Case No. 00 C 6513 <br><br> Magistrate Judge Ian H. Levin |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Shaffer ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner (the "Commissioner") of the Social Security Administration denying her applications for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the court remands the cause for proceedings consistent with this opinion.

## PROCEDURAL HISTORY

Plaintiff, Cynthia E. Shaffer, filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in September 1997, alleging that she had been disabled since December 31, 1992, due to "bad nerves." (R. 16, 34, 47, 51.)[1] Plaintiff met the earnings requirement for DIB insured status up until the date her insurance expired, which was March 31, 1996, but not thereafter. (R. 50.) After an administrative hearing, the Administrative Law Judge (ALJ) issued a partially favorable decision, finding that Plaintiff was disabled as of February 25, 1998, but not prior thereto. (R. 16-26.) The Appeals Council denied review, thus leaving the

---

[1]References are to the certified administrative record prepared by the Commissioner and filed with this court pursuant to 42 U.S.C. § 405(g).

ALJ's decision as the final decision of the Commissioner. (R. 6-7.) Plaintiff seeks judicial review of this decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## LEGAL STANDARDS

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Social Security Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### II. STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, a SSI or DIB claimant must be "disabled" as defined by the Social Security Act. *See* 42 U.S.C.§ 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See Brewer*, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's "residual functional capacity ("RFC") and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also*

Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d at 1391.

## BACKGROUND FACTS

### 1. PLAINTIFF'S TESTIMONY

Plaintiff, born March 9, 1964, was 35 years old when the ALJ decided her claims and thus was considered a "younger individual" during the time period considered by the ALJ. (R. 16.) 20 C.F.R. § 404.1563(b). She was a high school graduate. (R. 53.) 20 C.F.R. § 404.1564(b)(4). Plaintiff reported that she last worked full-time in 1989 and thereafter held a variety of part-time jobs. (R. 66-71, 525-29, 549-50.)

Plaintiff alleged that she became unable to work on December 31, 1992, due to "bad nerves." (R. 47, 51.) She reported that when confronted with stress, she experienced disabling panic attacks, palpitations, and chest pain. (R. 51.) At the April 21, 1999 administrative hearing, Plaintiff testified that she had experienced anxiety ever since she was a teenager, at which time she was prescribed Valium (a tranquilizer). (R. 531, 541.) Since her alleged onset date, she was

4

treated with individual and group therapy, antidepressants, tranquilizers, and sleep aids. (R. 532-37.) At the time of the hearing, she testified that her medications included Valium and several anti-diarrhea pills. (R. 531.)

Plaintiff further testified at the administrative law hearing that she was a single mother, caring for three children. (R. 525.) She performed household chores including vacuuming, dusting, and doing the laundry. (R. 54, 61.) She played frisbee and baseball with her children. (R. 54.) She managed her own finances and went shopping. (R. 61, 63.) When asked how she functioned prior to the date she was last insured on March 31, 1996, she responded that she was able to care for herself and her children, with no help from her family. (R. 534.) She testified that "everything" seemed to get worse over the years and she suggested that this might have been due to raising her three children, including one with health problems. (R. 537.)

## II. MEDICAL EVIDENCE

The medical evidence confirms that Plaintiff has sought treatment for anxiety, depression, and chest pain. Beginning in 1986, Plaintiff complained of anxiety to her family doctor, William Gogan, M.D., and he prescribed Valium. (R. 455.) Dr. Gogan treated Plaintiff periodically for general complaints, including anxiety and palpitations, through February of 1995. (R. 444-56.) From December of 1993 through April of 1995, Plaintiff also received sporadic treatment from Dr. Kuchipudi for her general complaints including, but not limited to anxiety, nervousness, emotional stress and insomnia. (R. 508-17.) Drs Gogan and Kuchipudi recorded Plaintiff's subjective complaints and documented few objective clinical signs of

Plaintiff's anxiety, and Dr. Gogan routinely refilled Plaintiff's medications, sometimes over the telephone. (R. 444-46.)

From July of 1994 through August of 1995, Plaintiff received treatment at Proviso Family Services (Proviso). (R. 204-09, 315-25, 380-84, 416-19, 424-25.) When she began treatment, she complained of anxiety, depression and stress due to family problems. (R. 204, 315.) At an initial assessment, a therapist noted no ongoing problems with Plaintiff's appearance, behavior, memory, attention span, thought content, or thought process. (R. 317-18.) The therapist indicated that Plaintiff experienced "mild" problems with anxiety and sleeping, "moderate" problems with depression and her relationship with her children, and a "severe" problem with her spousal relationship. (R. 317-18.) A psychiatrist diagnosed major depression and prescribed Klonopin and an antidepressant. (R. 205-08.) Plaintiff received individual therapy which focused on family stressors and she was encouraged to attend job training. (R. 416-19, 424-25.) In April of 1995, Plaintiff moved away and was discharged from Proviso. (R. 420.)

Plaintiff returned to Proviso in January of 1996, at which time she complained of difficulty sleeping, anxiety, and depression due to a bad relationship with her boyfriend. (R. 351, 356.) Upon her return, a mental status examination revealed normal thought content, thought process, memory, affect, mood, appearance, presentation, speech, and orientation. (355.) Treatment at Proviso included medication monitoring and individual and group therapy. (R. 351.) Therapists and doctors supported Plaintiff's efforts to return to work and obtain her real estate license. (R. 343, 369, 376, 398.) Plaintiff did not consistently keep her scheduled

6

appointments and made little progress. (R. 190, 196, 201, 331, 351.) A therapist noted Plaintiff's medication seeking behavior as she often ran out of her medications and sought early refills. (R. 168, 187, 197-98, 202, 332, 339, 390.) When her therapist informed her that no more refills would be given, Plaintiff requested a new therapist. (R. 351.) After Plaintiff did not follow through with a referral, she was discharged from Proviso in November of 1997. (R. 351.)

Plaintiff also sought periodic emergency room treatment for a variety of complaints. Plaintiff complained of chest pain in December of 1991 and a rapid heartbeat in June of 1994 and was prescribed tranquilizers after each visit. (R. 497-501.) In January of 1995 and October of 1996, she presented to the emergency room after consuming alcohol and complained of a rapid heartbeat. Plaintiff asked for medications to calm her down. (R. 158-59, 487, 489, 491.) Emergency room doctors instructed her to avoid alcohol and follow-up with her doctor. (R. 159, 487, 489.) Plaintiff next presented to the emergency room in April of 1997 after she ran out of Klonopin earlier in the month. (R. 188.)

Plaintiff began treatment with Ronald Lotesto, M.D., on February 25, 1998. (R. 277.) *See* Defendant's Memo in Support for Summary Judgement (D.'s Memo in Supp. for Summ. J.) at 5. At an examination on that date, Plaintiff stated that she felt she was addicted to Klonopin and wanted be detoxified, and despite her medications, she complained of continued anxiety, depression, difficulty sleeping, decreased appetite and poor self-esteem. (R. 274.) Upon examination, Plaintiff's affect was restricted and her mood was dysphoric. (R. 274.) Dr. Lotesto diagnosed major depression with anxious features, an anxiety disorder not otherwise specified, and a possible panic disorder, and prescribed an antidepressant. (273-75.) At later examinations,

7

Dr. Lotesto observed Plaintiff to be tearful and agitated, with a constricted affect and prominent anxiety. (R. 278.) In May of 1998, Dr. Lotesto concluded that Plaintiff's symptoms interfered with her ability to engage in activities outside of the home and that she was unable to handle normal workplace stress. (R. 277, 279.) In March of 1999, Dr. Lotesto completed a "Psychiatric Review Technique Form" (PRT) and concluded that Plaintiff's anxiety disorder resulted in marked limitations in her activities of daily living and social functioning; frequent deficiencies in concentration, persistence, or pace; repeated episodes of deterioration in work or work-like settings; and a complete inability to function independently outside of her home. (R. 426-34.)

## III. VOCATIONAL EXPERT TESTIMONY

Thomas Dunleavy appeared at the administrative hearing and testified as a vocational expert (VE). (R. 550.) The ALJ asked the VE to assume a hypothetical individual who was limited to light work and had moderate limitations on her ability to carry out detailed instructions, maintain attention and concentration for extended periods. (R. 552-53.) The individual also had moderate limitations on her abilities to interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (R. 552-53.) The VE testified that an individual of Plaintiff's age, education, and work history with those limitations could perform such jobs as small products assembler, hand packager, laundry presser and folder. (R. 553-54.) The VE testified that approximately 22,000 such jobs existed in the Chicago area. (R. 553-54.)

## IV. THE ALJ'S FINDINGS AND DECISION HEREIN.

8

The ALJ found that Plaintiff was not disabled on December 31, 1992, which is the date Plaintiff alleged she became disabled.(R. 21.) The ALJ determined that the claimant had not engaged in any substantial gainful activity since December 31, 1992. The medical evidence suggests that the claimant is impaired by superventricular tachycardia, a history of possible alcohol abuse currently in remission, and major depression accompanied by an anxiety disorder. (*Id.*) The claimant met the special earnings requirements for Title II disability insurance benefits on December 31, 1992, and continued to meet those requirements through March 31, 1996. The ALJ determined, however, that the claimant's impairments, considered singly or in combination, did not meet or equal in severity the requirements established in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)

Because the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ, *inter alia*, assessed Plaintiff's residual functional capacity to determine what Plaintiff could do despite her limitations. *See* 20 C.F.R. § 404.1520(a)(e)(f). The claimant was found exertionally unlimited but with significant non-exertional limitations due to her mental impairments and/or superventricular tachycardia. (R. 21.) After reviewing the testimony, the ALJ found that the claimant's testimony was not credible with respect to her allegation that she became "disabled" on December 31, 1992, as the term is defined under the Social Security Act. However, the ALJ deemed the claimant's testimony to be credible with respect to the worsening of her condition such that she could no longer work as of February 25, 1998. (R. 19.) As a result, the ALJ found that up until February 24, 1998, the claimant had the physical and

mental residual functional capacity to perform past relevant work as a secretary and a waitress. (R. 20.) The ALJ therefore ruled that beginning February 25, 1998, the claimant could no longer perform any past relevant work or be expected to adjust to a significant range of unskilled work on a sustained basis. *See* SSR 85-15 and Rule 201.00(h) in Appendix 2, Subpart P, Regulations No. 4. (R. 21,22.)

Since the claimant was not found to be incapable of working by her impairments until well after the expiration of her insured status on April 1, 1996, she was not entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. (*Id.*)

## ANALYSIS

Plaintiff's initial contention in her motion for summary judgement is that the ALJ's determination that Plaintiff first came under a "disability," as the term is defined in the Social Security Act, on February 25, 1998, is not supported by "substantial evidence." *See* Plaintiff's Motion for Summary Judgement (Pl.'s Motion for Summ. J.) at 4. To support her argument, Plaintiff cites three grounds: (1) the finding by the ALJ that Plaintiff's impairments, considered singly or in combination, do not meet or equal in severity the requirements established in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4, is not supported by substantial evidence in the record as a whole; (2) the ALJ's finding that the Plaintiff's testimony was not credible with respect to her alleged date of disability on December 31, 1992 is not supported by substantial evidence in the record; (3) the finding by the ALJ that Plaintiff was not

prevented from working by her impairments until February 25, 1998, is not supported by substantial evidence in the record as a whole. *Id.*

Upon review of the record, the court finds that there exists substantial evidence to support the ALJ's determination as to the onset date of disability on February 25, 1998.

# I. ALJ'S APPLICATION OF SSR 83-20

The Plaintiff argues that the ALJ improperly failed to follow the dictates of Social Security Ruling 83-20 (SSR 83-20) and that, therefore, the cause must be remanded with instructions that the ALJ rely on a medical advisor, as required by SSR 83-20, to determine the onset date of Plaintiff's disability.

SSR 83-20 instructs adjudicators to consider three factors when determining an onset date of disability: (1) the individuals statement as to when the disability began; (2) the claimant's work history; and (3) all medical and other relevant evidence. The ALJ need not refer to SSR 83-20 by name, it will suffice that he conduct the required analysis. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir. 1989).

SSR 83-20 sets forth specific instructions where precise evidence is not available and the ALJ must infer the onset-of-disability date:

"How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. *At the hearing, the*

11

*administrative law judge should call on the services of a medical advisor when onset must be inferred."* SSR 83-20 (emphasis added).

Plaintiff alleges that the ALJ failed to properly apply SSR 83-20, which provides in part that for conditions other than trauma-induced injuries, the date of onset alleged by the applicant should be used if it is consistent with all the evidence available. *Lichter v. Bowen,* 814 F.2d 430, 436 (7th Cir. 1987); SSR 83-20; *See* Plaintiff's Memo in Support for Summary Judgement (Pl.'s Memo in Supp. for Summ. J.) at 6. Where an ALJ does not mention SSR 83-20 or employ its analysis, remand is necessary because the ALJ's determination of the onset date might have been different had he applied SSR 83-20. *Id.* at 7; *Lichter,* 814 F.2d at 436.

As stated, Plaintiff argues that the ALJ committed an error of law in failing to call upon the services of a medical advisor. Pl.'s Motion for Summ. J. at 5. SSR 83-20 states that when there is an incomplete medical history and an onset date must be inferred, the ALJ should call on the services of a medical advisor to help make the necessary inference. *See* SSR 83-20; *Pugh,* 870 F.2d at 1278.

On the other hand, Defendant contends that the ALJ need not refer to SSR 83-20 by name. *See* D.'s Memo in Supp. for Summ. J at 11. The Seventh Circuit stated that if the ALJ conducts the requisite analysis, his failure, as here, to refer to SSR 83-20 by name is not fatal. *Pugh,* 870 F.2d at 1274. Defendant argues that the ALJ properly applied SSR 83-20 and correctly rejected Plaintiff's alleged onset date because the treatment notes surrounding that date focused on pregnancy and postpartum issues. D.'s Memo in Supp. for Summ. J. 12. Defendant states that objective mental status abnormalities, such as restricted affect, dysphoric mood and

agoraphobia were first observed by Dr. Lotesto on February 25, 1998. *Id.* at 13; (R. 274, 279.) On May 13, 1998, Dr. Lotesto assessed significant work-related limitations by concluding that Plaintiff was unable to handle normal workplace stress. (R. 279.) Defendant states that the ALJ reasonably related Plaintiff's inability to handle workplace stress back to the first time that the Plaintiff sought Dr. Lotesto's medical assistance on February 25, 1998, as this rationale is supported by treatment notes.[2] *See* D.'s Motion in Supp. for Summ. J. at 5, 14; (R. 277.) Thus, Defendant concludes that the ALJ's finding that Plaintiff's disability commenced on February 25, 1998, is supported by medical evidence, which is the most important SSR 83-20 factor in determining the onset date of disability. *Id.*; *See* SSR 83-20.

In response to Plaintiff's contention that the ALJ erred in not calling upon a psychiatric medical expert to determine the onset date of disability, Defendant notes that SSR 83-20 does not require that an ALJ use a medical advisor in all cases. Rather, SSR 83-20 calls for the service of an expert only where the medical history is incomplete and the onset date must be inferred. *Id; Pugh,* 870 F.2d at 1278. Defendant suggests that in this case, there is a complete chronology of Plaintiff's medical condition from the late 1980's through early 1999. Defendant argues that the ALJ did not have to infer Plaintiff's onset date from an incomplete medical record and he was therefore not required to seek the opinion of a medical expert. *See* D.'s Memo in Supp. for Summ. J. at 14.

---

[2]Although Dr. Lotesto indicated that he first saw Plaintiff in December of 1997 (R. 277), both Plaintiff and her attorney reported that she began treatment with Dr. Lotesto on February 25, 1998. (R. 82, 523, 535.)

The ALJ considered the date that Plaintiff alleged she became disabled, that is December 31, 1992. (R. 17-18, 21, 47.) The ALJ found that this date had little significance with respect to the particular disability under question. However, Plaintiff reported that she had problems with her nerves and a rapid heartbeat ever since she was twelve. (R. 51.) Plaintiff cites treatment notes dating back from February of 1987 through February of 1995 where her doctor documented her complaints of anxiety. *See* Plaintiff's Response to Defendant's Memo in Support for Summary Judgement at 2. (R. 444-56.) Although Plaintiff suffered from episodes of anxiety and nervousness, she does not indicate why her anxiety reached a disabling status on December 31, 1992. Significantly, the record does not reflect any mental health treatment on or around the alleged date. Instead, the record conveys that Plaintiff gave birth to her second child in December of 1992 and treatment surrounding that date focuses on pregnancy and postpartum issues. (R. 89-97, 445.) Plaintiff was first formally diagnosed with a severe disabling impairment by Dr. Lotesto, on March 29, 1999. For these reasons the ALJ, without calling upon the services of a medical advisor, determined that Plaintiff's onset date of disability was when she first visited Dr. Lotesto on February 25, 1998. (R. 21, 277.)

*Rice v. Apfel,* 8 F.Supp.2d 769, 774 (1998) is directly apposite in Plaintiff's favor. In *Rice,* Plaintiff alleged he was unable to work because of disabling asthma, ulcer and sinus conditions beginning December 30, 1989. *Id.* at 770. The ALJ found, however, that the claimant was disabled as of November 8, 1993. *Id.* at 774. Upon further review, the Court remanded the ALJ's decision so that a medical advisor could be called upon to infer the onset date of disability.

14

The reason given for this decision was that other evidence in the record made it possible to "at least potentially infer that an earlier date than November 8, 1993, was the correct disability onset date." *Id.* For instance, the claimant's medical evidence reflects ulcer problems in November of 1990, and again in April of 1991. In August of 1991 the medical record reflects the ulcer was "currently under control with medication. *Id.* at 771. The claimant presented to the emergency room on July 23, 1991, for difficulty breathing through his nostrils. *Id.* at 772. In April of 1992, one Dr. Ivanovich stated that upon review of the claimant and his medical records, claimant did not have "any physical condition or limitation related to sitting, standing, walking, lifting, hearing or speaking." The claimant testified that in May of 1993, he took a job at Omni Super Store, which lasted only three weeks because he became short of breath. For these reasons, the Court ordered the ALJ to follow the guidelines set forth in SSR 83-20 and call upon the services of a medical advisor to infer the disability onset date.

Here, the evidentiary situation is like *Rice*. For example, the medical evidence confirms that Plaintiff has sought treatment for anxiety, depression, and chest pain. Beginning in 1986, Plaintiff complained of anxiety to her family doctor, William Gogan, M.D., and he prescribed Valium. (R. 455.) Dr. Gogan treated Plaintiff periodically for general complaints, including anxiety and palpitations, through February of 1995. (R. 444-56.) From December of 1993 through April of 1995, Plaintiff also received sporadic treatment from Dr. Kuchipudi for her general complaints including, but not limited to anxiety, nervousness, emotional stress and insomnia. (R. 508-17.) Drs. Gogan and Kuchipudi recorded Plaintiff's subjective complaints

and documented few objective clinical signs of Plaintiff's anxiety, and Dr. Gogan routinely refilled Plaintiff's medications, sometimes over the telephone. (R. 444-46).

From July of 1994 through August of 1995, Plaintiff received treatment at Proviso Family Services (Proviso). (R. 204-09, 315-25, 380-84, 416-19, 424-25.) When she began treatment, she complained of anxiety, depression and stress due to family problems. (R. 204, 315.) At an initial assessment, a therapist noted no ongoing problems with Plaintiff's appearance, behavior, memory, attention span, thought content, or thought process. (R. 317-18.) A therapist indicated that Plaintiff experienced "mild" problems with anxiety and sleeping, "moderate" problems with depression and her relationship with her children, and a "severe" problem with her spousal relationship. (R. 317-18.) A psychiatrist diagnosed major depression and prescribed Klonopin and an antidepressant. (R. 205-08.) Plaintiff received individual therapy that focused on family stressors and she was encouraged to attend job training. (R. 416-19, 424-25.) In April of 1995, Plaintiff moved away and was discharged from Proviso. (R. 420.)

Plaintiff returned to Proviso in January of 1996, at which time she complained of difficulty sleeping, anxiety, and depression due to a bad relationship with her boyfriend. (R. 351, 356.) Upon her return, a mental status examination revealed normal thought content, thought process, memory, affect, mood, appearance, presentation, speech, and orientation. (355.) Treatment at Proviso included medication monitoring and individual and group therapy. (R. 351.) Therapists and doctors supported Plaintiff's efforts to return to work and obtain her real estate license. (R. 343, 369, 376, 398.) Plaintiff did not consistently keep her scheduled appointments and made little progress. (R. 190, 196, 201, 331, 351.) A therapist noted Plaintiff's

16

medication seeking behavior as she often ran out of her medications and sought early refills. (R. 168, 187, 197-98, 202, 332, 339, 390.) When her therapist informed her that no more refills would be given, Plaintiff requested a new therapist. (R. 351.) After Plaintiff did not follow through with a referral, she was discharged from Proviso in November of 1997. (R. 351.)

Plaintiff also sought periodic emergency room treatment for a variety of complaints. Plaintiff complained of chest pain in December of 1991 and a rapid heartbeat in June of 1994 and was prescribed tranquilizers after each visit. (R. 497-501.) In January of 1995 and October of 1996, she presented to the emergency room after consuming alcohol and complained of a rapid heartbeat. Plaintiff asked for medications to calm her down. (R. 158-59, 487, 489, 491.) Emergency room doctors instructed her to avoid alcohol and follow-up with her doctor. (R. 159, 487, 489.) Plaintiff next presented to the emergency room in April of 1997 after she ran out of Klonopin earlier in the month. (R. 188.)

As somewhat recited, heretofore, dating from March of 1995 through January of 1996, Plaintiff received assistance from Dr. Gogan, whose records contain reports of stress, anxiety and nerves. (R. 441-82.) Additionally, there are emergency room records from La Grange Memorial Hospital of December 29, 1991 through January 7, 1995, reporting anxiety, increased cardiac awareness and tachycardia. (R. 483-507.)

In light of the aforementioned evidence, the court finds that it is appropriate and necessary to call upon the services of a medical advisor herein to aid in the inference of an onset

17

date of disability.[3] Accordingly, the court hereby remands this case so that the ALJ may follow the guidelines set forth in SSR 83-20 by calling on the services of a medical advisor to assist in making the onset-of-disability determination.

## CONCLUSION

In view of the foregoing, the court grants Plaintiff's motion for summary judgment insofar as it requests a remand and denies Defendant's cross-motion for summary judgment. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion.

ENTER:

*Ian H. Levin*

IAN H. LEVIN
**United States Magistrate Judge**

Dated: August 2, 2001

---

[3] As set forth above, when the date of onset must be inferred, SSR 83-20 states that the ALJ should seek the services of a medical advisor. The Seventh Circuit has observed this rule. *See, e.g., Lichter*, 814 F.2d at 434. Indeed, some courts have explicitly held that the services of a medical advisor are mandated in such instances. *See, e.g., Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993); *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).